UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ETON PHARMACEUTICALS, INC.,

Plaintiff,

v.

EXTREME V, INC. and JOHN WU,

Defendants.
_______________________________/

Case No. 2:25-cv-12561

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING**
**MOTION TO DISMISS [16] AND DENYING**
**MOTION FOR DEFAULT JUDGMENT [23] WITHOUT PREJUDICE**

Plaintiff Eton Pharmaceuticals, Inc. sued Defendants Extreme V, Inc., a supplement company, and its CEO, John Wu, for trademark infringement, false advertising, and unfair competition. ECF No. 1. Extreme V promptly moved to dismiss the complaint, while Mr. Wu did not respond. ECF Nos. 16, 20. The Clerk entered default against Mr. Wu, and Eton moved for a default judgment. ECF No. 23. For the following reasons, the Court will deny Extreme V's motion to dismiss, and deny without prejudice Eton's motion for default judgment.

**BACKGROUND**

The dispute here concerns two products: Galzin (zinc acetate), an FDA-approved pharmaceutical made by Eton that treats Wilson Disease, and Gluzin, a zinc-based dietary supplement made by Extreme V. ECF No. 1, PageID.6–7. Wilson disease is a rare genetic condition in which copper builds up in the body and can cause organ damage. *Id.* at PageID.2. Galzin is the only FDA-approved pharmaceutical zinc

therapy to treat Wilson disease in patients who have been previously treated with a chelating agent. *Id.* Galzin's trademarks have been listed in the Principal Register since 1999. ECF No. 1, PageID.7.

Gluzin, made by Defendant Extreme V, is a zinc compound called zinc gluconate, that according to Defendant, is an antioxidant that "strengthen[s] the immune system," and "alleviate[s] symptoms of . . . Wilson Disease." ECF No. 16, PageID.73. Gluzin is not an FDA-approved medication but rather a "nutritional dietary supplement." *Id.* at PageID.74.

In December 2024, Eton acquired Galzin from Teva Pharmaceuticals. ECF No. 1, PageID.6–7. On July 9, 2025, Eton sent a letter to Extreme V, to demand that it immediately cease and desist from the use of the name and marketing of Gluzin, among other requests. *Id.* PageID.11–12; ECF No. 1–5, PageID.36–38.[1]

On August 15, 2025, Plaintiff sued Extreme V and its CEO and alleged trademark infringement and false advertising under the Lanham Act, as well as trademark infringement and unfair competition under Michigan law. ECF No. 1, PageID.18–23. On November 7, 2025, Extreme V moved to dismiss Plaintiff's claims. ECF No. 16. It asserted laches, acquiescence, and estoppel as affirmative defenses

---

[1] Extreme V attached a declaration from "Shih Hwang Wu," the CEO of Extreme V, to their motion to dismiss. ECF No. 16-1. The Court, however, cannot consider such a declaration on a motion to dismiss. *See Rudd v. City of Norton Shores*, No. 1:18-cv-124, 2018 WL 3751399, at *4 (W.D. Mich. Aug. 8, 2018) (explaining that considering an affidavit on Rule 12(b)(6) motion "would obliterate the distinction between a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment"), *aff'd in part, rev'd in part and remanded on other grounds*, 977 F.3d 503 (6th Cir. 2020). Absent any opportunity for discovery, the Court will not convert the instant motion into a motion for summary judgment.

barring the trademark infringement claim and argued that Plaintiff failed to state a claim for false advertising. *Id.* at PageID.78, 84. Plaintiff opposed the motion, ECF No. 18, and the Court held a motion hearing on June 17, 2026.

## LEGAL STANDARD

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," then the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

On a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.).

## DISCUSSION

Extreme V moved to dismiss the trademark infringement and false advertising claims. It first argued that the Court should dismiss the trademark infringement claims because they are barred by laches, acquiescence, and estoppel. ECF No. 16, PageID.78–84. Second, as to Eton's false advertising claim, Extreme V argued that Eton did not plausibly plead that Extreme V made false or misleading statements that misled a substantial portion of its intended audience. The Court will address each argument in turn. It will then address Eton's motion for default judgment against Defendant John Wu.

I. Laches, Acquiescence and Estoppel

Laches, an affirmative defense, is based on the maxim that "equity aids the vigilant and not those who slumber on their rights." *Vance v. United States*, 965 F. Supp. 944, 946 (E.D. Mich. 1997) (citing *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)). In other words, laches is an equitable doctrine that protects against the negligent and unintentional failure of a litigant to protect their rights. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). A defendant can demonstrate laches by showing: (1) the "lack of diligence by the party against whom the defense is asserted," and (2) "prejudice to the party asserting it." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002).

Because the Lanham Act does not have a statute of limitations, to determine whether a plaintiff was diligent in protecting a trademark, courts in the Sixth Circuit look to the "relevant state-law statute of limitations." *Hunt v. Morissette*, No. 25-

1453/1550, 2025 U.S. App. LEXIS 33223, at *4 (6th Cir. Dec. 18, 2025) (citation modified) (quoting *Nartron Corp.*, 305 F.3d at 408). The statute of limitations begins to run when the plaintiff has "actual or constructive knowledge of the alleged infringing activity." *Nartron Corp.*, 305 F.3d at 408 (citation modified). If the plaintiff brings an action outside the relevant statute of limitations, courts presume that the defendant suffered prejudice. *DayCab Co. v. Prairie Tech., LLC*, 67 F.4th 837, 854 (6th Cir. 2023). The parties agree that the relevant statute of limitations, injury to personal property, in Michigan is three years, but they disagree about when it began to run. Mich. Comp. Laws § 600.5805; ECF No. 16, PageID.81; ECF No. 18, PageID.113.

At the motion to dismiss stage, defendants face an uphill battle in succeeding on an asserted affirmative defense. Because defendants have the burden of proving an affirmative defense, and because a court must accept the plaintiff's allegations as true, the facts necessary to prove the affirmative defense must appear on the face of the complaint. *See Jones v. Bock*, 549 U.S. 199, 215 (2007); *Bar's Prods., Inc. v. Bars Prods. Int'l, Inc.*, 662 F. App'x 400, 413 (6th Cir. 2016) (citing *Hensley*, 579 F.3d at 613).

Here, the Court must deny Extreme V's motion because, taking all the well-pleaded allegations as true, it cannot find that Plaintiff lacked diligence in bringing the trademark infringement claim. As an initial matter, Extreme V did not attempt to argue that the complaint demonstrates Eton's actual knowledge of the infringing activity. *See* ECF No. 18, PageID.113; ECF No. 21, PageID.134. The Court will

therefore address whether the complaint demonstrates that Plaintiff had constructive knowledge.

Extreme V cited a few sections in the complaint that purportedly establish Eton's knowledge of the allegedly infringing activity going back to "at least" 2010. ECF No. 16, PageID.80–81. It cited consumer reviews from Extreme V's website and a Wilson disease online forum, excerpted in the complaint, to demonstrate that Eton had constructive knowledge about the infringing activity dating back to the date the reviews were posted. ECF No. 16, PageID.80; ECF No. 1, PageID.12–16. They also argued that because the Wilson disease community is small, and because Eton (and its predecessor) was attacking the market, it was on constructive notice.

First, even though the complaint does include some reviews of Gluzin from 2010, the materials do not permit an inference that Eton or its predecessor knew of the reviews and were on notice *in 2010*. And second, the Court cannot use the size of the Wilson disease market to infer that Plaintiff sat on the sidelines instead of enforcing their trademark. To the contrary, at the motion to dismiss stage, the Court must consider only the allegations in the complaint and draw inferences in favor of the non-moving party. Nowhere in the complaint did Plaintiff allege that it was on notice of the allegedly infringing conduct. *See* 5 Wright & Miller's, *Federal Practice and Procedure* § 1277 (4th ed. 2026) ("[T]he defense of laches . . . depends largely upon questions of fact. Thus, a complaint seldom will disclose undisputed facts clearly establishing the defense of laches and a motion to dismiss generally is not a useful vehicle for raising the issue.").

True enough, Extreme V may be able to establish constructive knowledge through discovery or at trial. But at the present stage, the Court cannot credit Extreme V's arguments to dismiss the case because, unsurprisingly, the complaint does not prove its affirmative defense. *See Leonard Truck & Trailer Inc. v. Leonard Bldgs. and Truck Accessories*, No. 4:21-CV-2362, 2022 WL 2757724 (N.D. Ohio July 14, 2022) (collecting cases and explaining that because the laches defense is "inherently fact specific, district courts throughout this circuit and others have found that challenges to an action based on the doctrine of laches are not amenable to dismissal at the pleading stages" (citation modified)).

Finally, the affirmative defenses of acquiescence and estoppel require an even higher mental state than laches. *See Elvis Presley Enters.*, 936 F.2d at 894; *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1005 (2017) (citing *Elvis Presley Enters.*, 936 F.2d at 894 and *Nartron*, 305 F.3d at 412) (noting that acquiescence is intentional and that estoppel similarly requires showing at least intentionally misleading silence). Accordingly, because Extreme V's laches defense fails at this stage, so too do its acquiescence and estoppel defenses.

II. False Advertising Claim

Eton also sued Defendants for false advertising under the Lanham Act because it alleged that Defendants falsely promoted their product as "pharmaceutical grade zinc" and expressly or impliedly claimed it treats Wilson disease. ECF No. 1, PageID.19–21. According to Eton, the false advertisements misled customers to

purchase what they believed to be an equivalent product to Eton's FDA approved Galzin product. *Id.*

The Lanham Act prohibits companies from using "in commerce" any "false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). A plaintiff asserting false advertising "must show: (1) the defendant made a false or misleading statement of fact about the plaintiff's product or service, (2) the statement actually deceived or tended to deceive a substantial portion of the message's intended audience, (3) the statement likely influenced the intended audience's purchasing decisions, (4) the defendant introduced the statement in interstate commerce, and (5) a causal connection between the defendant's statement and the plaintiff's injury." *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452–53 (6th Cir. 2024) (citing *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 411 (6th Cir. 2024)).

Extreme V moved to dismiss the claim and challenged the first and second factors. ECF No. 16, PageID.84–89. The Court will address both in turn.

*A. False or Misleading Statements*

Only statements of fact are actionable for false advertising claims. *FedEx Ground Package Sys., Inc.*, 97 F.4th at 453. Thus, puffery, or an "unverifiable exaggeration to prove a point" will not suffice. *Id.* (citation omitted). Rather, a plaintiff must plead that a statement is "bald-faced, egregious, undeniable, over the top" and carries an "unambiguously deceptive" meaning. *Id.* (citations omitted).

Courts presume that literally false statements deceive their intended audience. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999).

Another way for a plaintiff to recover on a false advertising claim is to demonstrate that the defendant made a misleading statement of fact. *FedEx Ground Package Sys.,* 97 F.4th at 453–54. A misleading statement is "literally true, yet deceptive, or too ambiguous to support a finding of literal falsity." *Am. Council*, 185 F.3d at 614. Unlike literally false statements, a plaintiff proceeding on a misleading statement theory must demonstrate that a "'significant portion' of reasonable consumers were actually deceived by the defendant's messaging." *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018) (quoting *Am. Council*, 185 F.3d at 616). Plaintiffs usually prove this through customer surveys, but at the motion to dismiss stage, courts ask "whether the facts in the complaint support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers." *Id.* Courts are guided by "judicial experience" and "common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (citation modified).

Eton alleged two false or misleading "statements" in the complaint. ECF No. 1, PageID.20. In their brief, Eton also identified two instances of Defendants participating in Wilson's disease related events to promote their product. *See* ECF No. 18, PageID.122. But participation in events is not by itself a "statement" on which Plaintiff may base a false advertising claim on. *See Am. Council*, 185 F.3d at 614 ("[A] Lanham Act claim must be based upon a statement of fact."). The Court will only

analyze statements alleged in the complaint to determine whether they are false or misleading, and if misleading, whether Eton plausibly alleged that the statement deceived a significant number of reasonable customers.

First, Eton alleged that Gluzin's packaging and advertising "promote and advertise the Infringing Products as 'pharmaceutical grade zinc.'" ECF No. 1, PageID.20. According to Eton, the advertising is false or at the very least misleading because the packaging and advertising "are not pharmaceuticals, but rather are nutritional supplements." *Id.* And thus, the statement misleads customers into thinking it is a pharmaceutical that can be used to treat Wilson disease. ECF No. 18, PageID.124.

The Court agrees that, taking all Plaintiff's allegations as true and resolving inferences in favor of Eton, the statement can be false. First, the alleged statement on Gluzin's packaging that it is "pharmaceutical grade" zinc is a statement of fact. Next, the parties dispute what "pharmaceutical grade" actually implies or means. *See* ECF No. 16, PageID.85 (Extreme V arguing that based on "public documents and common sense 'pharmaceutical grade zinc' does not mean that the 'zinc' is a pharmaceutical"); ECF No. 18, PageID.123–124 (Eton arguing that a pharmaceutical grade must be "approved, conditionally approved, or indexed by the Food and Drug Administration (FDA)"). But at this stage, the Court can only accept the well-pleaded allegations. It is clear that Eton alleged that marketing Gluzin as "pharmaceutical grade" is false, and it is plausible, resolving all inferences in favor of Eton, that such a statement is false.

The Court will not opine on the precise meaning of "pharmaceutical grade" now, nor will it address whether Gluzin is or is not pharmaceutical grade. Discovery is necessary to bear out what pharmaceutical grade means in context. To be sure, Extreme V pointed the Court to no caselaw that would allow the Court to determine that the way in which "pharmaceutical grade" is used on Gluzin's packaging is not plausibly false. It only referred to websites outside of the complaint that the Court may not consider on a motion to dismiss. *See* ECF No. 16, PageID.85. While Extreme V's argument about the definition of pharmaceutical grade may ultimately be correct, the Court cannot countenance the argument based on websites outside of the complaint on a 12(b)(6) motion.

Second, Eton alleged that Defendants represented that Extreme V "produces a highly pure form of zinc, knowing that [the] product is taken to treat genetic disease." ECF No. 1, PageID.10 (citation modified). Both parties agreed that marketing Gluzin to treat Wilson disease would violate FDA regulations. ECF No. 16, PageID.86; ECF No. 18, PageID.124. But they drew opposite conclusions: Extreme V argued that it is not plausible that it claims its products treat Wilson's disease because such claims would violate FDA regulations, ECF No. 16, PageID.86, while Eton argued that it "is asserting that [Extreme V]'s statements violate FDA regulations, which makes [Extreme V]'s statements all the more egregious," ECF No. 18, PageID.124.

Despite the disagreement, the Court's task here is simple. It must decide whether Eton alleged that Defendants made a false statement in marketing their product as one that can treat Wilson disease. The Court finds that it did. It alleged

that Extreme V represented to the Wilson disease community that Gluzin can treat genetic diseases, "namely, Wilson disease." ECF No. 18, PageID.122 (citing ECF No. 1, PageID.29–30).[2] Because that is a statement of fact, and it is plausible that it is false, Extreme V's motion must be denied.[3]

Last, because Plaintiff plausibly stated a claim for false advertising by alleging Extreme V made literally false statements, the Court presumes that the statement deceived its intended audience. *Am. Council*, 185 F.3d at 614 (6th Cir. 1999). To state a claim for a misleading statement of fact, however, a plaintiff must allege that a "significant portion of reasonable consumers were actually deceived by the defendant's messaging." *FedEx Ground Package Sys.*, 97 F.4th at 454 (citation modified). Because the Court finds that Plaintiff stated a claim for a literally false statement, it need not decide, at this stage, whether the statements were also misleading. After discovery, if it is apparent that the statements alleged are not false, the Court may address whether they were misleading to a substantial portion of the intended audience.

---

[2] Plaintiff noted that it "recently discovered extensive additional false and misleading statements that Extreme V has publicly made concerning Gluzin and its ability to treat Wilson's disease" and offered to amend its complaint if the Court were to grant the motion. Discovery may or may not reveal other false or misleading statements that the Court may address at summary judgment at which time it will be able to decide whether statements are false or misleading on a full record.

[3] Extreme V did not challenge whether Wu's purported statement to the Wilson's disease Association was "commercial speech." *See generally* ECF No. 16, 21. The Court will therefore not address it. *See Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 800–01 (2015) (explaining what qualifies as "commercial advertising or promotion").

III. Motion for Default Judgment

As noted above, Eton sued both Extreme V and its CEO John Wu. Wu, however, never responded to the complaint despite being served, ECF No. 13, so the Clerk entered default against him, ECF No. 20. Eton subsequently moved for default judgment. ECF No. 23. The Court will not resolve Eton's motion at this time and deny it without prejudice.

Even though Plaintiff's motion is well taken, "[i]t is the 'preferred practice' in the Sixth Circuit, and in courts of this district, in multi-defendant cases involving a single defaulting defendant to delay granting the default judgment motion against only one or some of the defendants until the court reaches a decision on the merits against all." *Gray v. DTE Energy Co. Ret. Plan*, No. 2:24-CV-11416, 2026 WL 800186, at *3 (E.D. Mich. Mar. 23, 2026) (Berg, J.) (citations omitted). The doctrine stems from a nineteenth-century Supreme Court case, *Frow v. De La Vega*, 82 U.S. 552 (1872). And courts have extended the doctrine to cases where the liability of the Defendants is not joint. *See Gray*, 2026 WL 800186, at *3 (collecting cases). Here, Plaintiff asserted each claim against both Defendants. ECF No. 1, PageID.18–23. Their defenses and arguments will likely be similar, if not the same. To avoid inconsistent judgments, the Court will not rule on the motion for default judgment at this time. It will therefore deny the motion without prejudice. Eton may raise the issue later in the litigation.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant Extreme V's motion to dismiss [16] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for default judgment [23] against Defendant John Wu is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 25, 2026